# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF TEXAS
# SAN ANTONIO DIVISION

| | | |
|---|---|---|
| JUAN SEGURA, | § | |
| | § | |
| *Plaintiff,* | § | |
| | § | |
| v. | § | Civil Action No. SA-16-CV-468-XR |
| | § | |
| CATERPILLAR, INC. | § | |
| | § | |
| *Defendant.* | § | |
| | § | |

## ORDER ON MOTION FOR SUMMARY JUDGMENT

On this date, the Court considered Defendant Caterpillar, Inc.'s Motion for Summary Judgment (docket no. 34), and the Response and Reply thereto. After careful consideration, the Court will deny the motion.

### Background

Plaintiff Juan Segura was an employee of Waste Management in San Antonio on October 7, 2015, the date of the incident underlying this lawsuit. According to the First Amended Complaint (docket no. 27), Plaintiff's job required him to pick up receiver boxes containing waste and recyclables from several facilities, including from Caterpillar, Inc.'s premises in Seguin, Texas, and transport them to another location controlled by Waste Management to be emptied. The receiver box is a movable container that works in connection with a separate stationary compactor that compresses the material in the receiver box before being picked up by Waste Management. Plaintiff alleges that he picked up a receiver box "that was packed full of recyclable material from Defendant, Caterpillar, Inc.'s premises" and then

1

took it back to his place of employment and attempted to open the box. Plaintiff alleges that Defendant's employees, agents, or representatives were responsible for packing the receiver box, and that "Defendant had overloaded or overpacked the receiver box to such an extent that the metal safety pin that keeps the handle secured popped out and releas[ed] the handle with such force that it struck Plaintiff in the head, face, and eye."

In his deposition, Plaintiff testified that the pin holding the door shut was stuck, and after he used a length of pipe and a hammer to free the pin, the handle swung out unexpectedly and struck him. Plaintiff's supervisor testified that all receiver boxes are under some amount of pressure because the onsite compactor compresses the material inside, and excessive pressure can cause the handle to swing out. Elliott depo. at 110. Elliott further testified that Waste Management employees have no way to know how much pressure the box contents are under.

Plaintiff sues Caterpillar, Inc. for negligence based on its actions in, among other things, (1) failing to provide adequate safety training and instruction for those working upon the site in regard to the packing of the receiver box; (2) over-packing the receiver box causing the receiver safety pin to pop out and the handle to swing with extreme force due to the pressure on the doors; (3) failing to exercise ordinary care in the maintenance and oversight of the compacter and receiver box to insure that the container box did not become overpacked or overloaded; (4) creating an unreasonably dangerous condition by overpacking the container box and failing to warn Plaintiff of the unreasonably dangerous condition; (5) failing to properly ensure that only those competently trained and licensed utilized equipment such as the receiver box; and (6) failing to warn Plaintiff that a dangerous condition existed if the

receiver box were to be opened. Defendant now moves for summary judgment, asserting that it owed no duty to Plaintiff as a matter of law.

**Analysis**

Negligence, a common-law doctrine, consists of three essential elements: a legal duty owed by one person to another, a breach of that duty, and damages proximately resulting from the breach. *El Chico Corp. v. Poole*, 732 S.W.2d 306, 311 (Tex. 1987). "Duty is the threshold inquiry; a plaintiff must prove the existence and violation of a duty owed to him by the defendant to establish liability in tort." *Id.* The existence of a duty is generally a question of law for the court. Defendant moves for summary judgment and argues: (1) Caterpillar had no duty to make sure the subcontractor's (Waste Management) employees performed their work in a safe manner; (2) the risk was not foreseeable; and (3) Caterpillar had no duty to warn Plaintiff because Plaintiff was already aware of the potential danger.

Defendant's first argument – that it owed no duty to make sure subcontractors perform their work in a safe manner – is inapposite. Defendant argues that the undisputed evidence is that Plaintiff worked for Waste Management, at a Waste Management facility, using Waste Management equipment at the time of the injury, and thus Caterpillar did not exercise the kind of control that would give rise to a duty. Defendant cites cases holding that one who entrusts work to an independent contractor may be liable for physical harm to others to the extent it maintains control over the independent contractor's work and fails to exercise that control with reasonable care. *E.g.*, *Hoechst-Celanese Corp. v. Mendez*, 967 S.W.2d 354 (Tex. 1998).[1]

---

[1] These cases cite the Restatement (Second) of Torts § 414, which provides that "[o]ne who entrusts work to an independent contractor, but who retains the control of any part of the work, is subject to liability for physical harm to others for whose safety the employer owes a duty to exercise reasonable care, which is caused by his failure to exercise his control with reasonable care." The duty under § 414 is directed to employers who "retain a

But Plaintiff is not complaining of his own or any subcontractor's work, which would trigger an inquiry into the degree of control that Caterpillar maintained or exercised over *that* work. Rather, he complains that *Caterpillar and its employees* were negligent in packing the receiver box, an activity for which Caterpillar maintained control and responsibility. *See* First Am. Compl. ¶ 6 ("Defendant's employees, agents and/or representatives of Defendant, Caterpillar, Inc. were responsible for packing the receiver box."), *id.* ("Defendant had overloaded or overpacked the receiver box to such an extent that the metal safety pin that keeps the handle secured popped out …."). Plaintiff points to the deposition testimony of Plaintiff's supervisor[2] that it was Caterpillar's responsibility to ensure that the receiver box was safe for Waste Management employees and to the contract between Caterpillar and Waste Management to show that Caterpillar agreed to maintain care, custody, and control of the receiver boxes while at its facility and that it agreed not to overload (by weight or volume) the equipment. Docket no. 37-3 (Master Waste and Recycling Agreement between Caterpillar and Waste Management).[3]

---

control less than that which is necessary to subject him to liability as a master." *Hoechst-Celanese Corp. v. Mendez*, 967 S.W.2d 354, 356 (Tex. 1998).

[2] Response Ex. B (Elliott depo. Testimony at 30-31).

[3] In its reply brief, Defendant argues that Plaintiff is not a third-party beneficiary of the contract. But Plaintiff is not arguing that he is a third-party beneficiary of the contract and is not suing for breach of contract. He is using the contract to show that Caterpillar maintained control over the activity that was allegedly negligently conducted (packing the receiver boxes) and agreed not to overfill the containers, giving rise to a duty to those that would be foreseeably injured by that negligent activity. *E.g.*, Plaintiff's Response at 9 ("Defendant voluntarily retained the right to control the condition and activity which is the subject of this suit," "Defendant was obligated to ensure that the equipment would not be overloaded," and "Plaintiff testified that his injury resulted from the equipment being overloaded"); *id.* at 11 ("Thus, Caterpillar not only created the alleged dangerous condition being complained of, but then breached its duty to warn Plaintiff (or eliminate the condition completely)."). As the Texas Supreme Court discussed in *Southwestern Bell Telephone Co. v. Delanney*, 809 S.W.2d 493, 495 (Tex. 1991), the acts of a party may breach duties in tort or contract alone or simultaneously in both. The Texas Supreme Court has also recognized that "[a]ccompanying every contract is a common-law duty to perform with care, skill, and reasonable expedience and faithfulness the thing agreed to be done, and a negligent failure to observe any of these conditions is a tort, as well as a breach of contract." *Id.* (quoting *Montgomery Ward & Co. v. Scharrenbeck*, 204 S.W.2d 508, 510 (Tex. 1947)). If Caterpillar negligently overloaded the container and created a foreseeable risk of harm to Waste Management employees, it may be liable in tort for such injuries even

Employers may be liable under *respondeat superior* principles for the negligent acts of their own employees, as well as for their own negligent acts. Plaintiff alleges that Caterpillar's employee or employees were negligent in packing the receiver box, and that Caterpillar is liable under *respondeat superior* principles for that negligence. Plaintiff also alleges that Caterpillar was negligent in certain ways, including in failing to provide adequate safety training and instruction for those working on the site in regard to the packing of the receiver box and failing to properly ensure that only those competently trained and licensed utilized the receiver box. Plaintiff thus relies on a traditional common-law duty analysis applicable to an employer's own negligence and its exercise of control over its own employees acting within the course and scope of their employment (the master-servant relationship).[4] *See Read v. Scott Fetzer Co.*, 990 S.W.2d 732, 736 (Tex. 1998) (distinguishing between cases involving a "straightforward common-law duty [balancing] analysis" and the duty emanating from retained control over the details of the work of an independent contractor). Caterpillar's motion for summary judgment on the basis that it had no control over its subcontractor's employees and thus owed no duty is denied.[5]

---

though that conduct also breached the contract. Whether Plaintiff is a third-party beneficiary of the contract is not determinative of the tort cause of action.

[4] Defendant's reply brief reaffirms that Defendant is improperly focusing on its control over Plaintiff's or Waste Management's work. It asserts that "Plaintiff argues that some level of control by Caterpillar over the work performed by Plaintiff creates a duty even though there is no evidence this is the case." Reply at 2. Plaintiff never asserts that Caterpillar maintained or asserted any control over *his* work.

[5] Further, though Caterpillar's initial motion relies on premises liability cases, *e.g.*, *Williams v. Olivo*, 952 S.W.2d 523 (Tex. 1997), *Exxon Corp. v. Tidwell*, 867 S.W.2d 19 (Tex. 1993), Caterpillar's reply (correctly) argues in response to Plaintiff's assertion that he was owed duties as an invitee that this is not a premises liability case and that premises liability cases do not apply. The Court notes that Chapter 95 of the Texas Civil Practice and Remedies Code also does not apply because the personal injury to a contractor's employee must arise from the condition or use of an improvement to real property where the contractor or subcontractor constructs, repairs, renovates, or modifies the improvement. TEX. CIV. PRAC. & REM. CODE § 95.002. No one contends that the receiver box is an improvement to real property. This is also not a products liability case under Chapter 82 because Plaintiff is not suing a manufacturer or seller of a product. Rather, this is an ordinary negligence case.

Caterpillar next argues that it had no duty because the risk was not foreseeable. In determining whether the defendant was under a duty, the court will consider several interrelated factors, including the risk, foreseeability, and likelihood of injury weighed against the social utility of the actor's conduct, the magnitude of the burden of guarding against the injury, and the consequences of placing the burden on the defendant. *Greater Houston Transp. Co. v. Phillips*, 801 S.W.2d 523, 525 (Tex. 1990). Of all these factors, foreseeability of the risk is "the foremost and dominant consideration." *Id.*

"Foreseeability" means that the actor, as a person of ordinary intelligence, should have anticipated the dangers that his negligent act created for others. *Travis v. City of Mesquite*, 830 S.W.2d 94, 98 (Tex. 1992). Foreseeability does not require that a person anticipate the precise manner in which injury will occur once he has created a dangerous situation through his negligence; it requires only that the general danger be foreseeable. However, along with the general danger, it must also be foreseeable that the particular plaintiff, or someone similarly situated, would be harmed by that danger. *Mellon Mortgage Co. v. Holder*, 5 S.W.3d 654, 655 (Tex. 1999). Stated broadly, we consider both the foreseeability of the general danger and the foreseeability that a particular plaintiff – or one similarly situated – would be harmed by that danger. *Id.* Thus, in order for the actor to be negligent with respect to the other, his conduct must create a recognizable risk of harm to the other individually or to a class of persons of which the other is a member. *Id.* (citing RESTATEMENT (SECOND) OF TORTS § 281 cmt. c (1965)).

Although the existence of duty is typically a legal question, when the essential facts about foreseeability as an element of duty are disputed, the question is a fact issue. *See Union Pacific R. Co. v. Williams*, 85 S.W.3d 162, 166 (Tex. 2002). Stated another way, the existence

6

of a duty is a question of law only when all of the essential facts are undisputed. *See Walls v. Prudential Prop. & Cas. Ins.*, No. 05-97-02212-CV, 2000 WL 805220, at *4 (Tex. App.—Dallas June 23, 2000, pet. denied). When the evidence does not conclusively establish the pertinent facts or reasonable inferences to be drawn therefrom, particularly as to knowledge and foreseeability, the question becomes one of fact for the jury. *Id.*

Defendant contends that the risk to plaintiff (or the class of Waste Management employees unloading receiver boxes) was not foreseeable because (1) Caterpillar had no knowledge and never received any notification from Waste Management that the boxes were overpacked or that anything needed to be corrected with regard to the compactors; (2) it never had any reason to believe that receiver boxes could be overpacked or that it would create a hazard; (3) Caterpillar used the equipment as suggested by the manufacturer; (4) there were no controls that would allow Caterpillar to adjust or override the settings; (5) the compactor itself does not provide any way of determining whether the compactor was packed beyond its capacity; and (6) the operation of the compactor itself makes a dangerous condition unlikely and not foreseeable because the compactor shuts off when full and an employee cannot use the compactor to push more trash into the receiver box.

Defendant supports its arguments on foreseeability with the deposition testimony of William Proscia, its corporate representative. Based on that deposition testimony, Defendant asserts that when the compacting button is engaged, the compactor cycles its ram three times to push the material into the receiver box, and then the ram goes back to its home position to allow more material to be put in. Defendant contends that, once the compactor reaches a

7

certain amount of resistance, the ram stops mid-cycle, and this indicates that it is full.[6] Caterpillar asserts that its employees are trained to turn the compactor off at that point, lower the garage door separating it from the work area, and use a different compactor or a trash can. However, there is no written policy to this effect.

Proscia testified that, once the compactor stops completing a full cycle, pushing the button again would not cause the machine to compact further, and that "[y]ou can't reach and push anything by hand." Proscia depo. at 65. Proscia further testified that he did not know if the settings could be adjusted, and that he was not aware of an override mechanism. *Id.* at 67, 165-66. He also testified that Caterpillar employees use the equipment as the manufacturer suggests – "All we do is put the stuff in it, push the button to make it function and – and that's it. And when it says it's full, we stop using it." *Id.* at 115. He stated that the only way to know if it was full is when the arm stops pushing. *Id.*

Plaintiff argues that it was Caterpillar's responsibility to ensure that the receiver box was safe for Waste Management employees servicing the containers, and that it failed to do so. Plaintiff notes that Caterpillar contractually agreed not to overload the containers and argues that the "testimony . . . demonstrates that the recognized reason for not overloading or overpacking these containers is because of the danger and risk in overpressurizing the contents." Response at 12. Plaintiff argues that "the Master Agreement demonstrates that Defendant contemplated the consequences of overloading the containers being serviced by Waste Management employees since Defendant contractually agreed not to overload them." *Id.* Plaintiff also points to the testimony of Plaintiff's supervisor, Frank Elliott, that it is the

---

[6] Proscia testified that there is a pressure gauge, but it simply reads the pressure rather than telling the compactor that the box is full and to stop compacting because the machine still operates even when the pressure gauge is broken. Proscia depo. at 67.

customer's (Caterpillar's) responsibility to ensure that the receiver box is safe for Waste Management employees, including making sure that it is not packed in such a way that it creates a danger for Waste Management employees.

Plaintiff relies on Caterpillar's contractual agreement to not overfill the container to establish that it was foreseeable to Caterpillar that overfilling the container posed a risk to Waste Management employees, arguing that "Caterpillar appreciated the risk in overloading '(by weight or volume)' a container, as it was specifically referenced in the Master Agreement." However, Caterpillar's agreement to not overfill the containers does not necessarily mean that Caterpillar knew or should have known all of the risks associated with overfilling the container. Plaintiff argues that the deposition testimony "demonstrates that the recognized reason for not overloading or overpacking these containers is because of the danger and risk in overpressurizing the contents," but that deposition testimony is from Waste Management employees, not Caterpillar employees.

Although it is undisputed that Caterpillar did maintain control over filling the containers and agreed not to overfill the containers, there are reasons for the contract to include this requirement other than protecting Waste Management employees from over-pressurized containers. For instance, if a container were overfilled by weight, it would be too heavy to be lifted and/or emptied. Plaintiff testified that if a container is overweight, it can cause the wheels to come off the ground, and the container must be put back down. Segura depo. at 51. Plaintiff's supervisor Elliott testified that if a container is overweight the truck tires might be compressed or the cable may struggle to "suck it up on the rails of the truck." Elliott depo. at 32. If the container is too heavy, it cannot be hauled and is put back down. *Id.*

9

Thus, the contractual agreement not to overload the containers may not have been for safety reasons. Nevertheless, the contract does establish that Caterpillar maintained control over filling the containers and agreed not to overfill them, and thus Caterpillar had a duty not to negligently fill the container by creating an unreasonable risk of harm to those who would come in contact with the containers such as Waste Management employees.

Plaintiff also takes issue with Caterpillar's assertion that Waste Management had not informed it that any containers had been overfilled, arguing that foreseeability of the risk does not require Waste Management to complain. But Plaintiff misunderstands Caterpillar's argument, which is that if the equipment does not indicate that it is overfilled and Waste Management had never complained that containers were overfilled, it had no reason to know that the containers were overfilled and thus posed any potential problem. Nevertheless, the Court finds that Plaintiff has produced sufficient evidence, though slim, to survive summary judgment on the issue of duty. Specifically, Plaintiff provides undisputed evidence that Caterpillar agreed to be responsible and was solely responsible for filling the containers. Caterpillar also controlled the compactor that compressed the material into the containers and agreed not to overfill (by weight or volume) the containers. Thus, Caterpillar agreed not to overfill the container and, if the container was overfilled, it was because Caterpillar overfilled it.[7]

Moreover, by agreeing not to overfill the containers, Caterpillar would necessarily be required to determine whether a container was appropriately filled in order to prevent it from being overfilled. But Proscia did not know how to determine whether a container was

---

[7] Elliott testified that even smaller loads can cause pressure on the door from shifting. Elliott depo. at 65, 81. Caterpillar has not moved for summary judgment on the issue of whether the container was in fact overpacked, and thus the Court assumes for summary-judgment purposes that it was.

overpacked and testified that there were no written procedures to make sure that the containers were not overpacked; the practice was simply to shut the machine off and close the door when the machine stopped cycling. Proscia depo. at 102. Plaintiff contends that "Defendant failed to ensure that the pressure gauge was properly monitoring or controlling the pressure the compactor exerted," but there is unclear testimony about the function of the pressure gauge. Proscia testified that the pressure gauge does not measure the pressure in the container, but only the pressure exerted by the compactor, and as the container gets fuller the pressure reading increases. Proscia depo. at 56.[8] He did not know what the pressure gauge should be recording. *Id.* at 71. He also testified that the pressure gauge does not control the functioning of the compactor, because the compactor works even when the pressure gauge is broken. Thus, Proscia seemed to believe that some other mechanism was responsible for alerting the compactor that the container was full and to stop cycling. But Elliott's testimony indicated that Caterpillar could be controlling the pressure in the containers, stating that, in theory, Caterpillar could have a compactor loading materials to a much higher pressure level, but he did not know what their pressures were set to in order to know if they did that. Elliott depo. at 69. Thus, the evidence is unclear whether Caterpillar had a way to measure and/or control the pressure in the receiver box.

Plaintiff further provides evidence that, when overfilled, the pressure of the contents on the door posed a risk to those opening the door. Caterpillar has failed to establish as a matter of law that injury to Waste Management employees from such pressure on the door was not foreseeable. Caterpillar was supposed to ensure that the container was not overfilled by

---

[8] Proscia also testified that he did not know if the amount of pressure being exerted by the compactor could be adjusted.

weight or by volume. As noted, the foreseeable consequences of overfilling by weight are that the container cannot be transported. But Caterpillar's reasons for agreeing not to overfill the container by volume are unclear. It is not clear whether Caterpillar was supposed to monitor the pressure in the container (as discussed, the evidence does not clarify the role of the pressure gauge and Caterpillar's ability to measure or control the pressure in the container), and it could be a reasonably foreseeable consequence of overfilling/overpressurizing the container that a Waste Management employee opening the container door could be injured. Proscia agreed that compressing more stuff into the container creates more pressure, and that Plaintiff's counsel's statement that overpacking could mean that "its contents become so pressurized that it is too full" "makes sense." Proscia depo. at 103-04. Caterpillar has failed to carry its burden of establishing a lack of foreseeability as a matter of law.

Caterpillar next argues that it had no duty to warn because Plaintiff had actual knowledge of the potential for a dangerous condition. Caterpillar notes that Plaintiff admitted in his deposition that Waste Management provided him training to address this problem. Specifically, Defendant contends that Plaintiff was aware that, when a handle is stuck, he should follow specific protocols requiring him to find someone to help open the door, placing a heavy piece of equipment up against the door while the handle was being opened, instead of doing it himself. However, because Plaintiff could not locate someone to assist him, he chose to open the door alone. Segura depo. at 60 ("Q. And if Waste Management had – if they had provided you training and told you that if a door is stuck, you're supposed to go to somebody at the site to help you open the door . . . – is that what you should have done on that day? A.

Should have, but there was no one there."). Defendant contends that this is evidence of Plaintiff's actual knowledge of the potential danger.

Plaintiff argues that an invitee's knowledge of a dangerous condition is irrelevant with respect to the existence of a property owner's duty, but Caterpillar responds that this is not a premises liability case and Plaintiff is not an invitee. The Court agrees that this is not a premises liability case. However, under general negligence principles, a person has a duty to warn about dangerous conditions that he has negligently created and that he knew or in the exercise of reasonable diligence should have known about.[9] Plaintiff contends that Caterpillar contractually assumed control over properly filling the container, that there was no way for him or Waste Management employees to know at what pressure Caterpillar had set its compactor during onsite loading, and there was no way for him to know whether a container was overloaded. Plaintiff testified that the pin was stuck, but sometimes they are bent (there was also testimony that they could become stuck from rust), and he did not know what was wrong with it. Segura depo. at 34. Defendant has not shown that Plaintiff knew that the container was overfilled/overpressurized, and Plaintiff's failure to follow his safety protocols goes to comparative responsibility rather than a lack of duty related to dangerous conditions allegedly created by Caterpillar employees.

---

[9] Defendant argues that it had no duty to warn because the compactor does not provide any way for Caterpillar to determine whether it is overpacked. However, as discussed above, Defendant agreed not to overfill the containers, which implies that it undertook to determine whether the containers were properly filled.

## Conclusion

Defendant's motion for summary judgment on the basis that it owed no duty is DENIED.

It is so ORDERED.

SIGNED this 9th day of January, 2018.

_____
XAVIER RODRIGUEZ
UNITED STATES DISTRICT JUDGE